Peter Jakab (PJ-8553)
FEIN & JAKAB
THE WOOLWORTH BUILDING
233 Broadway • Suite 930
New York, NY 10279
212 732 9290 Ph
212 227 6479 Fx

*Attorneys for Defendants*
GLASSMAN, EDWARDS, WADE & WYATT, P.C.
and AUDET & PARTNERS, LLP

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ, LLP;  KAPLAN FOX KILSHEIMER LLP;  PRETI FLAHERTY BELIVEAU & PACHIOS LLP; and BRAMLETT LAW OFFICES,<br><br>                              Plaintiffs,<br><br>              - against -<br><br>GLASSMAN, EDWARDS, WADE WYATT, P.C. AND AUDET & PARTNERS LLP,<br><br>                              Defendants. | ECF CASE<br><br>Case No.: 08-cv-5751 (JGK)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR REMAND AND REPLY IN SUPPORT OF <u>MOTION TO TRANSFER VENUE</u>** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………….. ii

INTRODUCTION AND SUMMARY…………………………………………………... 2

ARGUMENT……………………………………………………………………….. 4

I.      THIS ACTION SHOULD BE TRANSFERRED TO
THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSE………………………………... 4

II.     THE MOTION TO REMAND SHOULD BE DENIED…………………….… 9

CONCLUSION…………………………………………………………………….... 12

i

# **TABLE OF AUTHORITIES**

**CASE LAW** — Page No.

*Alderman v. Pan Am World Airways*
169 F.3d 99 (2d Cir. 1999)……………………………………………………………… 4, 5

*Baer v. First Options of Chicago, Inc.*
72 F.3d 1294 (7th Cir. 1995)…………………………………………………………….. 3, 4

*Carter v. Hofler-Saunders*
2003 U.S. App. LEXIS 24842 (6th Cir. Ky. Nov. 26, 2003)…………………………………… 3, 4

*Chesley v. Union Carbide Corp.*
927 F.2d 60 (2d Cir. 1991)……………………………………………………………… 2, 3, 4

*Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., et al.*
863 F.2d 251 (2d Cir. 1988)……………………………………………………………. 3, 4, 5

*Eagle Star Group, Inc. v, R.J. Ahmann Co.*
Slip Copy 2007 WL 2042523 (D. Kan. July 12, 2007)…………………………………… 6,

*Faggionato v. Lerner*
500 F.Supp.2d 237 (S.D.N.Y. 2007)……………………………………………………….. 3

*Federal Insurance Company v. Tyco International Ltd.*
422 F.Supp.2d 357 (S.D.N.Y. 2006)…………………………………………………….. 10

*General Elec. Co. v. Westinghouse Elec. Corp.*
297 F. Supp. 84 (D. Mass. 1969)………………………………………………………... 6

*Grimes v. Chrysler Motors Corp.*
565 F.2d 841 (2d Cir. 1977)…………………………………………………………….. 3, 4

*Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*
399 F.2d 289 (2d Cir.1968)………………………………………………………………. 3

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*
399 F.Supp.2d 356 (S.D.N.Y. 2005)…………………………………………………….. 10, 11

*Kalyawongsa v. Moffett*
105 F.3d 283 (6th Cir. 1997)……………………………………………………………. 3, 4, 5

*Kuperstein v. Hoffman Laroche, Inc.*
457 F.Supp.2d 467 (S.D.N.Y. 2006)……………………………………………………... 11

*Lagor v. Eli Lilly and Co.*
Slip Copy 2007 WL 1748888 (D.D.C. June 18, 2007)…………………………………….. 6

*Orrell v. Motorcarparts of America, Inc.*
Slip Copy, 2007 WL 895503 (W.D.N.C. March 22, 2007)……………………………….. 6

*Whitaker v. American Telecasting, Inc.*
261 F.3d 196 (2nd Cir. 2001)……………………………………………………………. 10, 11


**<u>STATUTES</u>**

| | |
|---|---|
| 28 U.S.C. § 1332………………………………………………………………………… | 9, 11 |
| 28 U.S.C. § 1367………………………………………………………………………… | 9 |
| 28 U.S.C. § 1404………………………………………………………………………… | 2, 11 |
|     (a)…………………………………………………………………………….. | 6, 12 |
| 28 U.S.C. § 1746………………………………………………………………………… | 10 |
| Tenn. Code Ann. § 23-2-102……………………………………………………………. | 8 |
| Tenn. Code Ann. § 23-2-103……………………………………………………………. | 8 |

Defendants Glassman, Edwards, Wade & Wyatt, P.C. (the "Glassman Firm") and Audet & Partners, LLP (the "Audet Firm"), having removed this action filed by Plaintiffs Wolf Haldenstein Adler Freeman & Herz, LLP (the "Wolf Firm"), Kaplan Fox Kilsheimer LLP (the "Kaplan Firm"), Preti Flaherty Beliveau & Pachios LLP (the "Preti Firm") (together, the "Wolf Group") and Bramlett Law Offices, respectfully submit this Memorandum of Law in Opposition to Motion for Remand and Reply in Support of their Motion to Transfer Venue of this Action to the United States District Curt for the Western District of Tennessee.

## INTRODUCTION AND SUMMARY

In the Opening Memorandum, Defendants explained that this fee dispute between two groups of court-appointed lead class counsel in certain antitrust litigation pending in United States District Court for the Western District of Tennessee, should be transferred to that court and consolidated with the fee proceedings already being actively litigated there by these same parties. Defendants cited many cases, including cases from the Second and Sixth Circuit Courts of Appeals, for the settled and self-evident proposition that the court in which a principal action is or was pending has supplemental jurisdiction over any fee disputes that arise among counsel. Open. Mem. at 6.

Without citing a single case, Plaintiffs invent the position that no such supplemental jurisdiction exists, insisting that this fee action, and the underlying ACR Litigation in which the fee was earned, (1) "are not so related," and (2) in any event the ACR Litigation is no longer pending Pltf. Mem. at 8-9. Accepting Plaintiffs' position would be to ignore the Second Circuit clear rejection of *both* arguments: "[A]ncillary jurisdiction to resolve fee disputes continues after the initial litigation is no longer before the court." *Chesley v. Union Carbide Corp.* 927 F.2d 60, 65 (2d Cir. 1991). This case easily meets the standard for, and the well-established factors heavily favor, transfer to the Western District of Tennessee under 28 U.S.C. § 1404. See Part I, *infra*.

Next, Plaintiffs urge that instead of being transferred to the Western District of Tennessee, this action should be remanded to New York Supreme. Pltf. Mem. at 9-10. Nevermind that everything to do with the ACR Litigation, including the very same fee dispute presented here, is and has been pending in the Western District of Tennessee, Plaintiffs are adamant that the federal courts, including this Court, are without the power to transfer this case there. Again, to credit Plaintiffs' position would be to ignore the long line of federal precedent establishing that supplemental jurisdiction exists to hear fee disputes arising from federal cases. *E.g., Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1297-1301 (7th Cir. 1995); *Chesley v. Union Carbide Corp.* 927 F.2d 60, 65 (2d Cir. 1991); *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., et al.*, 863 F.2d 251 (2d Cir. 1988); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-288 (6th Cir. 1997); *Carter v. Hofler-Saunders*, 2003 U.S. App. LEXIS 24842 (6th Cir. Ky. Nov. 26, 2003). See Part II, *infra*.

As explained in the Removal Petition, yet another basis for federal jurisdiction is diversity because although Plaintiffs' Complaint names the Bramlett Law Offices as a plaintiff to try to destroy diversity, it makes absolutely no claim on Bramlett's behalf. Petition ¶ 23. Plaintiffs' response never once mentions its Complaint; instead, Plaintiffs assert in their brief that Bramlett *does* have a right to attorney fees because it was "court-appointed interim liaison counsel in the ACR Litigations." Pltf. Mem. at 10. But the Complaint makes no such claim for Bramlett. The Complaint states only claims for tortious interference and declaratory judgment based on contracts to which it is undisputed that Bramlett is not party. A stranger to a contract can neither enforce it nor bring a claim for tortious interference with it. *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 292 (2d Cir.1968) (affirming dismissal for lack of standing because plaintiff was neither a party to the contract or third party beneficiary); *Faggionato v. Lerner*, 500 F.Supp.2d 237, 248 (S.D.N.Y. 2007) ("Where claim is asserted is contractual and plaintiff is not party to contract or third party beneficiary of contract, claim must be dismissed for lack of standing").

The notion that Bramlett should be paid a fee because of its court-appointed post, its

3

work in the ACR Litigations and its status as counsel of record in the ACR Litigations—the very arguments that support Defendants' claim to fees—appears nowhere in the removed complaint and serves only to underscore the appropriateness of the transfer of this action to the Western District of Tennessee, the court that did the appointing of counsel and presided over the ACR Litigation.  See Part II, *infra*.

## ARGUMENT

### I.

### THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

As we established in the Opening Memorandum, the court in which a principal action is or was pending has supplemental jurisdiction over any fee disputes that arise between or among counsel and/or their clients in connection with such action.  Open. Mem. at  8.  Defendants cited seven (7) recent cases from the Second and Sixth Circuit Courts of Appeals for this universally accepted proposition.  Id. at 8-9; *Alderman v. Pan Am World Airways*, 169 F.3d 99, 101-102 (2d Cir. 1999); *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1297-1301 (7th Cir. 1995); *Chesley v. Union Carbide Corp.* 927 F.2d 60, 65 (2d Cir. 1991); *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., et al.*, 863 F.2d 251 (2d Cir. 1988); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287-288 (6th Cir. 1997); *Carter v. Hofler-Saunders*, 2003 U.S. App. LEXIS 24842 (6th Cir. Ky. Nov. 26, 2003).

Remarkably, Plaintiffs chose not to mention a single one of them.  Even more remarkably, Plaintiffs cite no cases whatsoever, but simply insist that the ACR litigation and this fee dispute from it are "not so related," "completely separate," "a totally distinct controversy."  Pltf. Mem. at 8.  Yet this is precisely the argument rejected by each of the cases cited.  Those cases are controlling and Plaintiffs' failure to mention them or any other cases is an example of the adage that an opposition is most instructive for what it does *not* say.

The cases are not just controlling, but they are based on sound principles of judicial economy and docket control that are as old as the courts themselves.  The Second Circuit has

4

pointed out that presiding district court's familiarity with the subject matter of the underlying action and the services rendered by counsel therein as well as the district court's duty to protect attorneys of record in the principal action, as officers of the court are the salutary purposes behind the exercise of supplemental jurisdiction over fee disputes. *Cluett*, 863 F.2d at 257. "[f]amiliarity with the amount and quality of work performed by [the attorneys] would enormously facilitate rapid disposition of a fee dispute, while a great deal of the record would have to be considered anew and relitigated in a state court unfamiliar with the proceedings." *Id; Alderman v. Pan Am World Airways*, 169 F.3d 99, 101-102 (2d Cir. 1999) ("already familiar with the relevant facts and legal issues"); *Kalyawongsa*, 105 F.3d at 288 ("Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues").

Add to these principles the additional judicial economy issue here raised by the fact that fee proceedings for this very fee dispute are already being heavily litigated before Judge Donald in the Western District of Tennessee. Jakab Decl. Ex. E. Thus, failure to transfer this action to that court will not only result in the inefficiency of a New York judge having to learn what Judge Donald of Tennessee already knows, but also in the pendency of two action in distant courts for the same claims. In their 17 page brief, Plaintiffs do not dispute that such a state of affairs will have the effect of driving up the costs, draining resources, burdening dockets and presenting a very real risk of conflicting results.

No, Plaintiffs do not dispute this because burdening these fee claimants, driving up their costs and forum shopping for a new judge will tend to deter Defendants from pursuing their right to an attorney's fee in the Tennessee ACR Litigation, which is the Wolf Group's goal. Plaintiffs' are tactics this Court should not countenance and goals this Court should not help them achieve.

Finally, Plaintiffs badly misunderstand the factors that inform Section 1404 transfer analysis.

**Plaintiffs' Choice of Forum**. As mentioned in the Opening Memorandum, a plaintiff's choice of forum is not entitled to any deference where that forum has no connection to the

dispute. This principle is certainly operative here where Plaintiffs chose New York to present the issue of attorneys fees due a Tennessee law firm and one from California for their two years of litigation in the Western District of Tennessee.

Another way to view this factor is that two years ago, Plaintiffs chose to bring the ACR Litigation in the Western District of Tennessee. That was where these Plaintiff law firms filed the actions. That was Plaintiffs' choice of forum for all ACR Litigation matters—the choice that would be entitled to deference. New York is these Plaintiffs' second choice of forum, one that smacks of forum-shopping.

A plaintiff's second choice of forum when it was displeased with the first is not the kind of choice that is entitled to deference and usually results in transfer back to the first choice. *Eagle Star Group, Inc. v, R.J. Ahmann Co.*, Slip Copy 2007 WL 2042523, *2 (D. Kan. July 12, 2007) (where court is "plaintiff's second choice of forum," "the court does not believe that plaintiff's choice of forum weighs in favor of this court retaining the case"); *Lagor v. Eli Lilly and Co.*, Slip Copy 2007 WL 1748888, *3 (D.D.C. June 18, 2007) ("this Court accords no weight to plaintiff's second-choice of forum"); *Orrell v. Motorcarparts of America, Inc.*, Slip Copy, 2007 WL 895503, *3 (W.D.N.C. March 22, 2007) (no authority that "a plaintiff's second choice of forum is entitled to any, much less great, weight"). This rule holds especially true in a race to the courthouse situation, such as is presented here, where this action and the Fee Proceedings were filed within days of each other.

> "It is not 'in the interests of justice' (28 U.S.C. § 1404(a)) to permit a party, simply by filing a complaint one day before its adversary under the circumstances presented here, to gain the respect and preference for its second choice of forum that is usually accorded its first choice. Nor would according a preference to plaintiff's second choice further the fundamental objective of all proceedings in district courts 'to secure the just, speedy and inexpensive determination of every action.' Federal Rule of Civil Procedure 1. It would be inconsistent with the sound, expeditious administration of a fair judicial system to permit repetitious litigation…."

*General Elec. Co. v. Westinghouse Elec. Corp.*, 297 F. Supp. 84, 87 (D. Mass. 1969).

**Convenience of Parties and Witnesses**. As the cases set forth above note, the court that presided over the action should adjudicate any fee dispute. Those cases explain that one reason

6

for this is that those parties and witnesses, like Plaintiffs and their ACR clients here, chose to file their ACR actions in the Western District of Tennessee and to litigate there for two years. They cannot now be heard to complain that Tennessee is inconvenient to litigate the ACR Litigation fee dispute. They have long ago waived this argument and are equitably and judicially estopped for benefiting from it now. Moreover, it is doubtful that this Court even has personal jurisdiction over Defendants, neither of which has taken any action in New York in the ACR Litigation.

**Locus of Facts and Documents**. The facts are the filings and proceedings, and the work that went into them, before the district court in the Western District of Tennessee. The documents are the docket in the ACR Litigation in that court and the contents of its file, including the Notices of Lien filed there by Defendants. As Plaintiffs admit in their Complaint in this action, Plaintiff "Wolf Haldenstein requested [Defendant] GEWW, and GEWW agreed, to serve as local counsel in the ACR Litigation." Compl. ¶ 11. That agreement was made in Tennessee for Tennessee local counsel and it is that agreement, among other things, that will inform parties' rights to attorneys fees, not the alleged settlement and fee agreements from which Defendants have been excluded by Plaintiffs.

**Governing Law**. Plaintiffs repeatedly assert that New York law governs whether defendant law firms, as plaintiffs' counsel of record in the ACR Litigation in Western District of Tennessee, can enforce their attorneys fees charging liens filed in the Tennessee court to recover fees and expenses from the settlement of the ACR Litigation. The stated basis for these assertions is that Plaintiffs allegedly made "settlement agreements" with the ACR Defendants and then made "fee agreements" with the ACR Plaintiffs, excluding Defendant law firms from both. Compl. ¶¶ 15-18. Because Plaintiffs placed clauses in the "settlement agreements" and in the "fee agreements" providing they are governed by New York law, Plaintiffs assert that this action is so governed.

But Defendants are not parties to any of those agreements and cannot be bound by their terms. Nor did either Defendant ever take any action within the state of New York that might be thereby governed by New York law. Accordingly, it is virtually impossible that New York law would apply.

7

Under Tennessee law, an attorney who files a lawsuit in Tennessee, as well as one who is hired after suit is filed there and becomes attorney of record therein, automatically has a charging lien according him a security interest in the proceeds of the recovery in the suit. Tenn. Code Ann. §§ 23-2-102, 23-2-103. Section 23-2-103 provides:

> "Any attorney or solicitor who is employed to prosecute a suit that has already been brought in any court of record shall have a lien upon the plaintiff's right of action from the date of the attorney's or solicitor's employment in the case; provided, that the record of the case shall first be made to show such employment by notice upon the rule docket of such court, or a written memorandum filed with the papers in the case, or by notice served upon the defendant in the case."

This is precisely what Plaintiffs admit they did—"requested [Defendant] GEWW (which was assisted by Defendant Audet), and GEWW agreed, to serve as local counsel for the ACR Litigation." Compl. ¶11. Both Defendants worked on and became plaintiffs' counsel of record in the ACR Litigation. Jakab Decl. Ex. A. Both Defendants were appointed by the Western District of Tennessee to be co-interim class counsel in the ACR Litigation. Jakab Decl. Ex. B. Thus, Defendants are accorded the statutory charging lien under Tennessee law and their entitlement to fees will be governed by Tennessee law.

**Judicial Efficiency and the Interests of Justice**. As noted above and in the numerous cases cited, it is beyond legitimate counterargument that judicial efficiency is served by consolidating this action with those for the identical relief pending in the Western District of Tennessee and by having the Judge that presided over the underlying action adjudicate the fee dispute. The interests of justice are not served by subjecting Defendants to multiple proceedings in two states for the same relief. Note that Plaintiff are proceeding *pro se*, saving attorneys fees, whereas Defendants are not admitted to practice in New York and have had to retain New York counsel to defend them. The interests of justice do not countenance base stratagems like Plaintiffs' here.

In sum, for the reasons stated in the Opening Memorandum and above, and under the controlling Second and Sixth Circuit cases cited above that Plaintiffs have chosen to ignore, this fee dispute should be transferred to the Western District of Tennessee and consolidated there

8

with the existing Fee Proceedings for adjudication by Judge Donald, whose presided over the underlying ACR Litigation that gave rise to this fee dispute.

## II.

## THE MOTION TO REMAND SHOULD BE DENIED

In our Removal Petition, Defendants established that there are two bases for federal jurisdiction—supplemental jurisdiction under 28 U.S.C. § 1367 and diversity jurisdiction under 28 U.S.C. § 1332. Rem. Pet'n ¶¶ 4, 16-24. Plaintiffs argue that neither exists. Pltf. Mem. 7-10.

The argument that supplemental jurisdiction is absent appears at pages 7-9 of the Plaintiffs' Memorandum. After briefly pointing out that this action is not supplemental to an action pending in *this* District Court, Plaintiffs acknowledge that in this case, supplemental jurisdiction is to be based on the ACR Litigation pending in the Western District of Tennessee. This is clearly correct, as 28 U.S.C § 1367 speaks in terms of "the district courts" having original jurisdiction, not any particular district court. Whether a change of venue is required, such as in this case, is not jurisdictional and does not eliminate the grant of jurisdiction to the district courts under the statutes.

Plaintiffs then proceed to argue that the ACR Litigation and this fee dispute from it are "not so related," "completely separate," "a totally distinct controversy." By these *ipse dixit* pronouncements, Plaintiffs feel they can ignore decades of controlling Second and Sixth Circuit case law establishing that the court presiding over the underlying action has supplemental jurisdiction over the fee dispute arising from it. See Part I, *supra*. For all the reasons stated in Part I, *supra*, the motion to remand should be denied.

The argument that diversity jurisdiction is absent appears at pages 9-10 of the Plaintiffs' Memorandum. There, Plaintiffs correctly point out that the touchstone for the fraudulent joinder analysis is the removed complaint. Pltf. Mem. at 9 ("Joinder is fraudulent if, on the face of the state court complaint, no cause of action lies…."). It is bewildering, therefore, that Plaintiffs then never again mention their complaint or its contents. Instead, Plaintiffs discuss some theoretical claims that the fraudulently joined plaintiff, Bramlett, might have based on its status as "both Local Counsel and court appointed Interim Liaison Counsel in the ACR Litigations."

9

Id. at 10.  Plaintiffs do not deny, of course, that no claims remotely resembling those theories appear in the Complaint, which contains only three claims—interference with the "settlement agreements," interference with the "fee agreements" and declaratory relief based on those agreements.  Bramlett is not a party to those agreements.  Thus, Bramlett has no standing to sue for interference or declaratory relief based on them.  Defendants made these points in their Opening Memorandum and Plaintiffs have not denied nor controverted them.

Bramlett's entitlement to fees based on theories of their status as local counsel and court appointed counsel are intentionally absent from the Plaintiffs' complaint.  This is because those theories are the very same ones the Defendants advance in support of *their* entitlement to fees from the ACR Litigation settlement.  The Complaint was clearly drafted for the Plaintiffs *other* than Bramlett, and Bramlett was added to the caption to try to prevent removal and transfer to the Western District of Tennessee.  Indeed, Bramlett was evidently unaware of the existence of any New York action even after it was served.  Even over a week after it was filed, Bramlett stated to Mr. Wade, his colleague in the Tennessee plaintiff bar, that the New York complaint was filed without Bramlett's knowledge or authorization.  Declaration of B.J. Wade in Opposition to Motion to Remand ¶¶  6-7.[1]  The only conclusion is that this is a cut-and-dried case of fraudulent joinder for the purpose of opening and holding a second front in this Tennessee fee dispute.

In sum, the parties agree that fraudulent joinder can be analyzed only by having reference to the contents of the complaint.  *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 207 (2nd Cir. 2001) ("In order to show … fraudulent joinder effected to defeat diversity, the defendant must demonstrate … that there is no possibility **based on the pleadings**, that a plaintiff can state a cause of action")(emphasis added); *Federal Insurance Company v. Tyco International Ltd.*, 422 F.Supp.2d 357, 368 (S.D.N.Y. 2006) ("the propriety of removal is to be determined by the **pleadings at the time of removal**.")(emphasis added); *In re Methyl Tertiary Butyl Ether Prod.*

---

[1] Although Bramlett now says he authorized the filing of the removed complaint, Bramlett's entire declaration is facially defective, containing neither an oath, jurat and notary of an affidavit nor the alternative "penalty of perjury" language under 28 U.S.C. § 1746 of a declaration.  Accordingly, the entire Bramlett "declaration" is a nullity, of no evidentiary value.

10

*Liab. Litig.*, 399 F.Supp.2d 356, 363 (S.D.N.Y. 2005) ("A court must thus consider the **complaint at the time of removal** to determine if removal was appropriate in the first place")(emphasis added). Here, Plaintiffs' remand motion does not mention the complaint because the complaint does not mention a claim by Bramlett, the fraudulently joined plaintiff. A claim cannot be stated in a brief.

Accordingly, and based on Bramlett's own statements, uncontroverted on this record by any competent evidence, Bramlett's joinder is fraudulent within the meaning of 28 U.S.C. § 1404 and the cases under it. *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F.Supp.2d 467, 470 (S.D.N.Y. 2006) ("'Fraudulent joinder' is a legal term of art used to refer to the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction, [and] the term may apply where … the non-diverse [party] … has no real connection with the controversy.") (internal quotation omitted); *See e.g. Whitaker v. American Telecasting, Inc.,* 261 F.3d 196 (2nd Cir. 2001) (joinder of non-diverse co-counsel was fraudulent where the Plaintiff's complaint "did not assert any claims against the [non-diverse co-counsel] and, in the prayer for relief, [Plaintiff] requests no relief against the [non-diverse co-counsel]."). Bramlett's citizenship thus disregarded, jurisdiction exists in the alternative under 28 U.S.C. § 1332 based on diversity of citizenship.

## CONCLUSION

For all the reasons stated, the Court should transfer this action to the United States District Court for the Western District of Tennessee under 28 U.S.C. § 1404(a).

Dated: New York, New York
      July 23, 2008                        Respectfully,

                                            FEIN & JAKAB
                                            THE WOOLWORTH BUILDING
                                            233 Broadway • Suite 930
                                            New York, NY 10279
                                            (212) 732-9290

                                            By:       /s/      .
                                                    PETER JAKAB (PJ-8553)

                                            *Attorneys for Defendants*
                                            GLASSMAN, EDWARDS, WADE &
                                            WYATT, P.C. and AUDET & PARTNERS,
                                            LLP

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2008, I caused to be mailed a true and correct copy of the foregoing Memorandum of Law in Opposition to Motion for Remand and Reply in Support of Motion to Transfer Venue and Declaration of B.J.Wade in Support of Motion to Transfer to the Western District of Tennessee and in Opposition to Motion to Remand, via first class U.S. mail, postage prepaid, to the following:

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Thomas H. Burt, Esq.
Russell S. Miness, Esq.
270 Madison Avenue
New York, NY 10016

KAPLAN FOX & KILSHEIMER LLP
Richard Kilsheimer, Esq.
850 Third Avenue, 14th Floor
New York, NY 10022

PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP
Gregory P. Hansel, Esq.
One City Center
P.O. Box 9546
Portland, ME 04112-9546

BRAMLETT LAW OFFICES
2400 Crestmoor Road
P.O. Box 150734
Nashville, TN 37215-0734


                                  /s/
                            PETER JAKAB